No. 46,030

JOSEPHINE M. RAWLINS, and two minor children, CRAIG EUGENE and TRINKA LYNN, by and through their mother and next friend, JOSEPHINE M. RAWLINS, *Appellees*, v. CHARLES W. STANLEY, as minor by and through his mother and next friend, MARY STANLEY, *Defendant*, FARMERS UNDERWRITERS ASSOCIATION, *Intervenor-Appellant*.

(486 P. 2d 840)

Opinion filed June 12, 1971.

*John J. Jurcyk, Jr.*, of McAnany, Van Cleave and Phillips, of Kansas City, Kansas, argued the cause, and *Robert D. Benham*, of the same firm, was with him on the brief for the Intervenor-Appellant.

*Charles D. Kugler*, of Carson, Mahoney and Fields, of Kansas City, Kansas, argued the cause, and *J. W. Mahoney*, of the same firm, was with him on the brief for the appellees.

The opinion of the court was delivered by

FOTH, C.: The basic issue presented in this appeal is whether an insurance carrier which has issued a policy containing an uninsured motorist clause may, by timely motion, intervene as of right as a party defendant in an action brought by its insured against an uninsured motorist. There are other issues the parties seek to have determined, but for reasons to be discussed we do not deem them ripe for decision on this record.

The details of the automobile collision out of which this action arose are not important to the decision in this case. Suffice it to say that on February 19, 1969, the plaintiffs-appellees, Josephine M. Rawlins and her two minor children, were passengers in a car driven by Mrs. Rawlins' husband, Edward G. Rawlins, on Reynolds Ave-

nue in Kansas City, Kansas, when the Rawlins car was involved in a collision with a car driven by the seventeen-year-old defendant below, Charles W. Stanley.

Although the record is not clear, apparently Mary Stanley, mother of Charles W. Stanley, thereafter brought an action in the magistrate court of Wyandotte County against Edward G. Rawlins for damage to the Stanley car. The intervenor-appellant, Farmers Underwriters Association (hereinafter "Farmers") apparently defended that action pursuant to its liability policy issued to Rawlins. The nature of the defense is not clear from the record, but apparently it was successful.

On May 2, 1969, counsel for plaintiffs addressed a letter to a claim agent for Farmers advising him in substance that the Rawlins' intended to bring an action against Charles Stanley for the plaintiffs' personal injuries; that he was informed that Stanley was uninsured; and that Rawlins intended to make a claim against Farmers under its uninsured motorist policy.

A copy of this letter was sent to counsel who had defended the prior magistrate court action, together with a request that he furnish plaintiffs' counsel with any available information concerning the accident.

So far as the record reveals, there was no further communication among any of these persons until plaintiffs' counsel received a letter from the trial court dated September 16, 1969, advising that the case was set for trial at 1:30 p. m. on September 30, 1969, whereupon, on September 17, 1969, plaintiffs' attorney wrote Farmers' claim agent advising him of the trial setting.

There is no indication in the record that Farmers was ever notified that the petition in this case had actually been filed on May 5, 1969, or that the defendant had, through counsel, filed an answer consisting of a general denial on May 27, 1969.

On September 24, 1969, Farmers filed a motion to intervene as a party defendant, and for a continuance of the trial in order to permit it to investigate plaintiffs' claims and prepare for trial. Attached to the motion was Farmers' proposed answer setting out that it had issued a policy to Rawlins with an uninsured motorist clause under which it might be liable to plaintiffs under certain circumstances if Stanley was uninsured; that plaintiffs had failed to comply with one of the terms of the policy requiring the insured to forward to Farmers a copy of the summons and petition in any action by the

insured against a third party; that its policy provided that it would not be bound as to liability or amount of damages by any judgment obtained by the insured against an uninsured motorist; and that it generally contravened the plaintiffs' allegations of negligence and injury.

The motion to intervene was heard by the trial court on September 30, 1969, before the trial was to commence. Plaintiffs strongly resisted the motion before the trial court, as they do here, on the ground that it was not timely. Although the proceedings on the motion do not appear in the record, each party includes a transcript of the court's findings from the bench as an appendix to its brief. The court's pertinent remarks were:

"All right. Apparently, it's an open question in Kansas how these matters should be handled. I'm on the side of making these two separate proceedings— one where the plaintiff proceeds against the alleged tort-feasor, and then if he prevails, he can proceed against his insurance company on the uninsured motorist clause. I think this is a lot better way to handle it. I'm not going to go on the basis of the delay in coming in, but I'm going to put it straight out that I think this is the way it ought to be handled—by separate proceedings. I doubt that anything I would say on whether the company is ultimately bound by a judgment which the plaintiff might get would be dicta only because as has been pointed out, the insurance company isn't in the case. It would be my guess that the insurance company would not be bound by the amount as determined by the Court in this proceeding; in view of the terms of the policy, but I don't think I am going to make a ruling one way or the other on that."

Intervention was accordingly denied, and this appeal followed.

The motion was made pursuant to that portion of K. S. A. 60-224 (a) which, prior to its amendment, read:

"(a) *Intervention of right.* Upon timely application anyone shall be permitted to intervene in an action: . . . (2) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action; . . ."

By subsequent amendment by this court, part (2) of what now appears as K. S. A. 1970 Supp. 60-224 (a) now reads:

"Upon timely application anyone shall be permitted to intervene in an action: . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter substantially impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

The effect of the amendment is to broaden the right of intervention. The showing now required is whether "as a practical

matter" the disposition of the case will "substantially impair or impede" the would-be intervenor's ability to protect his interests. He no longer must show that he is or may be "bound" by the judgment.

Under either version of the statute it appears that the right to intervene depends on the concurrence of three factors: (1) timely application; (2) a substantial interest in the subject matter; and (3) lack of adequate representation of the intervenor's interests.

In this case there is no question raised by either party as to the third element. Indeed, an examination of the trial proceedings shows the defense of the uninsured motorist Stanley to have been nominal at best. Plaintiffs' only two witnesses, Mr. and Mrs. Rawlins, were not cross examined either as to liability or injuries, and no medical evidence was adduced. The defense consisted of a brief narration by the minor defendant as to the circumstances of the collision. On this meager evidence the court awarded judgment to the plaintiffs in the amount of $4,850 to Mrs. Rawlins and $525 to each of the two children.

As to the other two statutory elements, the parties' arguments pass each other as ships in the night. Farmers, faced with the trial court's declaration as to its view that intervention is never proper, devotes almost its entire argument to the proposition that it at least "may be" bound by the judgment, and asks us to determine whether it would be. Plaintiffs-appellees, on the other hand, not wishing to concede that Farmers would *not* be bound, argue exclusively that the attempted intervention was not timely. Although the court below expressly declined to rule on that issue, they would have us affirm on the well known principle that a correct result will be upheld on appeal even if the wrong reason is given. See, *e. g., Pierce v. Board of County Commissioners*, 200 Kan. 74, Syl. ¶ 4, 434 P. 2d 858. They conclude by asking us to say that if intervention is proper so is joinder of the insurance company as a party defendant, even though they did not elect to follow that course.

The difficulty with both, so far as this court is concerned, is the state of the record. We do not have before us the policy itself, on which Farmers' contentions would appear to turn. It was issued, presumably, under the mandatory provisions of what is now K. S. A. 1970 Supp. 40-284 *et seq.* We assume it obligates Farmers in the statutory language to pay to its insured, the Rawlins', the amount

they "shall be legally entitled to recover as damages from the uninsured owner or operator of the motor vehicle." If the policy contained the statutory alternative "providing for such payment irrespective of legal liability of the insured or any other person or organization," Farmers' proposed defense would have been quite different. In addition we have before us only the two isolated excerpts from the policy contained in Farmers' proposed answer noted above, the first requiring notice to the company of the filing of an action and a copy of the process and pleadings, and the second providing that Farmers would not be bound by any judgment obtained in an action against an uninsured motorist.

What we do not know is whether the policy contains an arbitration clause, a "no action" clause forbidding suit by insured without consent of Farmers, or whether in the total context of the policy the clauses Farmers chose to excerpt in its proposed answer, or either of them, are so inextricably interwoven with such other clauses as to invalidate them. This was the holding in the recent case of *Heisner v. Jones,* 184 Neb. 602, 169 N. W. 2d 606. There the insured, after fruitless negotiations with her insurance carrier, brought suit against the uninsured motorist and secured a default judgment. She thereafter brought garnishment proceedings against the insurance carrier, which defended on the arbitration clause in its policy and its lack of consent to be bound by the results of the primary suit. The Nebraska court struck down both policy provisions, the arbitration clause as against public policy and the consent provision because ". . . although separately printed and stated in the policy, the consent to be bound provision and the arbitration clause are mutually complementary and mutually reciprocal, and inducive to each other, and therefore must be stricken as a part of an arbitration scheme which is void as against public policy." (184 Neb. 602, 609.) The insurance carrier's remedy, it was held, was to intervene in the original action by its insured.

While Kansas does not take exactly the same attitude as Nebraska toward agreements to arbitrate future disputes, such agreements are revocable at will by either party. See *Thompson v. Phillips Pipe Line Co.,* 200 Kan. 669, 438 P. 2d 146. We do not know, however, whether in any future litigation between the Rawlins' and Farmers the company's defense might be based on an arbitration clause, a "no action" clause, insufficiency of notice of this

action, or its stipulation not to be bound. Neither do we know whether any of such defenses would be legally tenable, when the entire policy is considered.

We note that in some states the statutes requiring uninsured motorist coverage also require the insured to serve process and pleadings on his carrier in any suit against an uninsured motorist. In this situation, it has been held that the insurance carrier has an absolute right to intervene. See *State Farm Mutual &c. Ins. 'Co. v. Glover,* 113 Ga. App. 815, 149 S. E. 2d 852; *State Farm &c. Ins. Co. v. Brown,* 114 Ga. App. 650, 152 S. E. 2d 641. The same result has been reached under policy provisions containing similar requirements as to service. *State v. Craig,* 364 S. W. 2d 343, 95 A. L. R. 2d 1321 (Mo. App. 1963). And, see Anno., 95 A. L. R. 2d 1330.

In *Boughton v. Farmers Insurance Exchange,* 354 P. 2d 1085, 79 A. L. R. 2d 1245 (Okla. 1960), the insurance carrier was denied the right to relitigate with its insured either the question of liability or damages where it had notice of the pendency of the action, including copies of process and pleadings, and chose to rely on its arbitration and no action clauses rather than intervene. The Oklahoma court, like the Nebraska court in *Heisner v. Jones, supra,* invalidated both these clauses. It held, without mention of either statutory or policy provisions requiring notice, that the company should have protected its interests in the first suit and was in effect "bound" by the judgment its insured obtained against the uninsured motorist. A similar result was reached in *Indiana Insurance Company v. Noble,* 265 N. E. 2d 419 (Ind. App. 1970), where the authorities are reviewed at length in an extensive opinion. Many, it will be noted, hold intervention proper on purely policy grounds, to avoid multiplicity of suits.

We cite these cases not for the proposition that Farmers *would* be bound by the judgment in the instant case. That issue could only arise in direct action on the policy by the Rawlins' against Farmers. We do cite them, and could cite others, to show that by failing to intervene after receiving notice of the pendency of such an action a carrier in Farmers position subjects itself to a distinct and real hazard that it *might* be so bound. Under our intervention statute quoted above that possibility was enough to give Farmers standing to intervene as a matter of right, if its application to do so was timely. The court below therefore erred in concluding that

any dispute between the Rawlins' and their carrier Farmers must be resolved in a separate action.

There remains the question of the timeliness of Farmers' motion to intervene. Appellees would have us find it untimely as a matter of law. This we cannot do on the record before us. Only two notices to Farmers appear in the record: one, a letter from plaintiffs' counsel stating that he *intended* to file an action, and the second a letter stating the matter was set for trial some twelve days later. This, so far as we know, was the first notice it received of the actual pendency of the action, and it acted with due dispatch upon its receipt. We cannot find that the first letter required Farmers to intervene in an action not yet filed and which might never be filed. Neither do we find that courthouse hall conversations supposedly occurring between plaintiffs' counsel and Farmers' counsel in prior litigation constituted notice to Farmers. We are not inclined to construe the notice provision of the policy in the abstract, without the benefit of the rest of the policy, but we do hold that Farmers' duty to act could not arise until it had actual knowledge of the pendency of the action. The propriety of joining Farmers as a party defendant is clearly not before us where no attempt was made to do so.

The court below should therefore reconsider Farmers' motion to intervene. If additional evidence is introduced of actual knowledge by Farmers of the pendency of the action at a point in time indicating the company slept on its rights, it may wish to adhere to its ruling denying intervention. If not, the judgment below should be vacated and Farmers' motion to intervene should be sustained.

The judgment is reversed and the case remanded for further proceedings in accordance with the views expressed herein.

APPROVED BY THE COURT.